UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

RUSSELL PUBLISHING GROUP, LTD.
and JANE RUSSELL,

            Plaintiffs,

- against -

BROWN PRINTING COMPANY,

           Defendant.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/3/14

OPINION AND ORDER

13 Civ. 5193 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

        Magazine publisher Russell Publishing Group, Ltd. ("RPG") and its proprietor, Jane Russell, bring this suit against RPG's printer, Brown Printing Company ("Brown") based on a billing dispute between RPG and Brown. Plaintiffs allege that Brown overbilled RPG for various services from 2007 through 2012, and bring multiple causes of action, including: (1) breach of contract; (2) breach of the covenant of good faith; (3) fraud; (4) breach of fiduciary duty; and (5) conversion. Plaintiffs also bring an action for an accounting. Russell seeks emotional distress damages on the tort claims. Brown moves to dismiss every

cause of action except RPG's breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Brown also argues that all claims must be dismissed as to Russell because she lacks standing to bring these claims in her individual capacity.  For the reasons stated below, the motion to dismiss is GRANTED.

## II.   BACKGROUND

In January 2007, RPG[2] and Brown entered into a five-year contract (the "Printing Agreement") under which Brown was to provide printing services for RPG's three magazines.[3]  The Printing Agreement grants Brown an interest in RPG's undelivered magazines as collateral security for payment owed to Brown.[4]  Under the Printing Agreement, if a payment dispute was not resolved within thirty

---

[1]   *See* Fed. R. Civ. P. 12(b)(6).

[2]   RPG was a limited partnership formed under Texas law consisting of Russell, her husband, Bill Russell, who died in 2008, and Iota Management, LLC, a Texas company set up by the Russells to act as general partner in RPG.  *See* Amended Complaint ("Compl.") ¶ 2.  Plaintiffs allege that RPG "ceased to exist as a partnership" following Bill Russell's death, and that Russell "continued RPG's business as a sole proprietorship," filing federal tax returns for income from RPG as a sole proprietor.  *Id.*  Iota Management, LLC, has ceased doing business and forfeited its existence. *See id.*  RPG has now been converted to a limited liability company.  *See* Memorandum of Law in Support of Plaintiffs' Opposition to Brown's Motion to Dismiss ("Opp. Mem.") at 2.

[3]   *See* Compl. ¶ 14; Printing Agreement, Ex. A to 9/25/13 Declaration of Sammi Malek, counsel for Brown, § 2.

[4]   Printing Agreement § 5.3.

days, RPG agreed "to pay the disputed amount in escrow to [Brown] or to a mutually accepted third party."[5] Prices set forth in the Agreement for materials purchased by Brown were subject to adjustment based on any change in Brown's costs.[6] Also, work commenced after January 16, 2010 was subject to adjustment by fifty percent of the increase or decrease in the Consumer Price Index.[7] The Printing Agreement states that Brown's "failure to give timely notice of any price change set forth in [the Printing Agreement] shall not constitute a waiver by [Brown] of its right to charge prices in accordance with [the Printing Agreement]."[8] Finally, the Printing Agreement specifies that disputes will be governed by New York law.[9]

Through a series of billing errors, Brown overcharged RPG by $193,706.78.[10] Plaintiffs allege that, among other things, Brown changed the configuration of RPG's magazines in a way that raised costs, sold paper to RPG

---

[5] *Id.* § 5.5.

[6] *See id.* at Exhibit B-1.

[7] *See id.*

[8] *Id.* § 4.1.

[9] *See id.* § 11.2.

[10] *See* Compl. ¶¶ 27–28.

without disclosing that it could have been purchased more cheaply, and billed for services that were never provided.[11] In an August 10, 2012 email, Brown's president acknowledged "some mistake in the book layout and billing" from 2008 through 2012, and offered RPG a credit of approximately $74,000.[12] When offering this credit, Brown itemized its billing errors, allegedly admitting that it failed to provide the most economical paper stock and book configuration, charged storage fees in excess of the amounts agreed upon in the Printing Agreement, and mistakenly billed for transportation.[13] Because the parties could not resolve their billing dispute, RPG refused to pay certain invoices and Brown subsequently refused to release RPG's magazines for distribution.[14]

        Plaintiffs contend that Brown's overbilling was part of a fraudulent scheme engineered by one of Brown's owners.[15] They allege that because the printing industry is in financial trouble, because of the pervasiveness of the billing errors, and because Brown "knew what it was permitted to bill" based on the

---

[11]    See id. ¶¶ 34–35, 37, 39–43.

[12]    Id. ¶ 29. The Complaint alleges both that the credit offered was $74,300 and that it was $73,500.

[13]    See id.

[14]    See id. ¶ 45.

[15]    See id. ¶¶ 32–33.

Printing Agreement, overbilling could not have been accidental.[16]  They further allege that Brown "held itself out as . . . an advisor," "encouraged customers to rely on [its] superior knowledge," and "sought to foster a close and confidential relationship [with RPG]."[17]  Plaintiffs allege that Brown undertook to act as an advisor by offering price quotes to RPG before the parties had entered into a contract and by providing suggestions related to various printing and shipping services over the life of the Printing Agreement.[18]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor."[19]  The court evaluates the sufficiency of the complaint under the two-pronged approach announced by the Supreme Court in

---

[16]   *Id.* ¶ 44.

[17]   *Id.* ¶ 11.

[18]   *Id.* ¶¶ 11–13.

[19]   *Franco Apparel Grp., Inc. v. National Liab. & Fire Ins. Co.*, 481 Fed. App'x 694, 695 (2d Cir. 2012) (citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).

*Ashcroft v. Iqbal*.[20]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[21]  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[22]

Under the second prong, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[23]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[25]

### B. Heightened Pleading Standard of Rule 9(b)

---

[20]   *See* 556 U.S. 662, 678–79 (2009).

[21]   *Id.* at 679.

[22]   *Id.* at 678.

[23]   *Id.* at 679.

[24]   *Id.* at 678.

[25]   *Id.* (quotation marks omitted).

"'All claims sounding in fraud . . . must comply with Rule 9(b)'s heightened pleading standard.'"[26] Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." This requires the plaintiff to: "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"[27] "Allegations that are conclusory or unsupported by factual assertions are insufficient."[28]

Although scienter may be alleged generally, "'the relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for [a] license to base claims of fraud on speculation and conclusory allegations,' and a plaintiff must still 'allege facts that give rise to a strong inference of fraudulent intent.'"[29]

---

[26] *Targum v. Citrin Cooperman & Co.*, No. 12 Civ. 6909, 2013 WL 6087400, at *4 (S.D.N.Y. Nov. 19, 2013) (quoting *Boritzer v. Calloway*, No. 10 Civ. 6264, 2013 WL 311013, at *4 (S.D.N.Y. Jan. 24, 2013)). *Accord Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184–85 (2d Cir. 2008).

[27] *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

[28] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).

[29] *Vaughn v. Air Line Pilots Ass'n*, 377 Fed. App'x 88, 90 (2d Cir. 2010) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)) (alteration in original).

A complaint gives rise to a strong inference of fraudulent intent if (1) the plaintiff alleges "'a motive for committing fraud and a clear opportunity for doing so,'" or (2) if "no motive is apparent, the plaintiff may plead scienter by 'identifying circumstances indicating conscious behavior by the defendant, though the strength of circumstantial allegations must be correspondingly greater.'"[30]

## IV. APPLICABLE LAW

### A. Standing to Sue on Behalf of Business Entities

An individual lacks standing to bring claims for breach of contract where injuries to the individual "were indirectly caused by harm to [a business organization] and therefore are not 'distinct.'"[31] "[I]t is axiomatic that '[a] shareholder — even the sole shareholder — does not have standing to assert claims alleging wrongs to the corporation.'"[32] Similarly, "'a partnership cause of action belongs only to the partnership itself or the partners jointly, and [ ] an individual

---

[30] *Id.* at 90–91 (quoting *Powers v. British Vita*, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995)).

[31] *See Caravella v. City of New York*, 79 Fed. App'x 452, 453 (2d Cir. 2003) (shareholder lacked individual standing to bring breach of contract claim because he was not party to contract and suffered no distinct harm). *Accord Dore v. Wormley*, 690 F. Supp. 2d 176, 186–87 (S.D.N.Y. 2010) (purported leader of a religious organization not entitled to maintain an action in her individual capacity where "the underlying legal right and interest" belonged to the organization).

[32] *Dore*, 690 F. Supp. 2d at 185 (quoting *Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987)).

member of the partnership may only sue and recover on a partnership obligation on the partnership's behalf.'"[33]  Under New York limited liability company law, "A partnership or limited partnership that has been converted [to a limited liability company] is for all purposes the same entity that existed before the conversion."[34] A case "pending by or against the converting partnership or limited partnership may be continued as if the conversion has not occurred."[35]

**B.  Fraud**

To state a claim for fraud under New York law, a plaintiff must show: "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."[36]  "'Where sophisticated businessmen engaged in major

---

[33]  *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 54 (2d Cir. 2000) (quoting *Gmerek v. Scrivner, Inc.*, 634 N.Y.S.2d 299, 299 (4th Dep't 1995)) (alteration in original).

[34]  N.Y. Ltd. Liab. Co. Law § 1007(a).

[35]  *Id.* § 1007(b)(ii).  The same is true under Texas law.  *See* Tex. Bus. Orgs. Ann. § 10.106(5) ("a proceeding pending by or against the converting entity . . . may be continued by or against the converted entity in the new organizational form . . . without a need for substituting a party").

[36]  *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996) (citing *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318 (1995); *Channel Master Corp. v. Aluminum Ltd. Sales*, 4 N.Y.2d 403 (1953)).  *Accord*

transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.'"[37]

"It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract."[38] However, "under New York law, parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages."[39] "'A general request for punitive damages is not enough to

---

*Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (same).

[37] *Universe Antiques, Inc. v. Vareika*, 510 Fed. App'x 74, 75 (2d Cir. 2013) (quoting *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984)).

[38] *Clifton v. Vista Computer Servs., LLC*, No. 01 Civ. 10206, 2002 WL 1585550, at *2 (S.D.N.Y. July 16, 2002) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996)).

[39] *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007) (citing *Bridgestone/Firestone*, 98 F.3d at 20). *Accord Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").

differentiate the damages recoverable for fraud from those sought for breach of contract.'"[40]

### C. The Implied Covenant of Good Faith

"Under New York law, the implied covenant of good faith and fair dealing inheres in every contract."[41] However, breach of this implied covenant is "'merely a breach of the underlying contract,'" not a separate cause of action.[42] "'[I]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'"[43]

---

[40] *Sekisui Am. Corp. v. Hart*, No. 12 Civ. 3479, 2012 WL 5039682, at *3 (S.D.N.Y. Oct. 17, 2012) (quoting *Allen v. Cox*, No. 10 Civ. 7118, 2011 WL 2436705, at *4 (S.D.N.Y. June 16, 2011)).

[41] *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994) (citing *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*, 30 N.Y.2d 34, 45 (1972)).

[42] *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)). *Accord Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007) ("[A] breach of the implied covenant is not a separate cause of action, but is instead one way of establishing a breach of contract.").

[43] *District Lodge 26 v. United Techs. Corp.*, 610 F.3d 44, 54 (2d Cir. 2010) (quoting *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005)).

### D. Fiduciary Duty

"'Generally, no fiduciary duties arise where parties deal at arm's length in conventional business transactions.'"[44]  "[A] fiduciary relationship may arise where the parties to a contract specifically agree to such a relationship, or if 'one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party.'"[45]  However, "reposing trust or confidence in a party that has superior access to confidential information is not sufficient to establish a fiduciary relationship — under New York law, there is no fiduciary duty unless the trust or confidence has been *accepted* as well."[46]

### E. Equitable Accounting

"In order to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with

---

[44] *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 104 (S.D.N.Y. 2013) (quoting *Pension Committee of University of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 592 F. Supp. 2d 608, 624 (S.D.N.Y. 2009)).

[45] *Pension Committee*, 592 F. Supp. 2d at 624 (quoting *Ross v. FSG PrivatAir, Inc.*, No. 03 Civ. 7292, 2004 WL 1837366, at *5 (S.D.N.Y. Aug. 17, 2004)).

[46] *King Cnty., Wash. v. IKB Deutsche Industriebank AG,* 863 F. Supp. 2d 288, 299 (S.D.N.Y. 2012) (citing *Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001)).

the defendant."[47]  Where a party bringing an action for an accounting has "failed to allege the existence of a fiduciary or otherwise confidential relationship . . . the accounting claim merits dismissal."[48]  Further, an action for an accounting is inapposite where a party has also brought a damages suit for breach of contract because the party can obtain any necessary information through discovery.[49]

### F.    Conversion

"To state a claim for conversion under New York law, [a] [p]laintiff must allege '(1) the property subject to conversion is a specific identifiable thing;

---

[47]  *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) (citing *Palazzo v. Palazzo*, 503 N.Y.S.2d 381, 384 (1st Dep't 1986)).  *Accord KJ Roberts & Co. v. MDC Partners Inc.*, No. 12 Civ. 5779, 2014 WL 1013828, at *12 (S.D.N.Y. Mar. 14, 2014) (holding that accounting is not available where the relationship between the parties consisted of an arm's length business deal).

[48]  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) (citing *Stadt v. Fox News Network LLC,* 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010)).  *Accord In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir. 1993) ("Under New York law . . . a 'denial or violation of the plaintiff's dominion, rights, or possession, is the basis of an action for conversion.'") (quoting *Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 487 (1983)).

[49]  *See Leveraged Leasing Admin. Corp.*, 87 F.3d at 49 (accounting would serve "no useful purpose" where plaintiffs also sought money damages in breach of contract and conversion claims and could therefore "obtain all the information they [sought] in their existing claims at law"); *Arnold Prods., Inc. v. Favorite Films Corp.*, 298 F.2d 540, 542–43 (2d Cir. 1962) (accounting not justified where party to contract "could, by means of familiar discovery devices, obtain any information . . . it needed to establish its allegations as to damages").

(2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'"[50] "[E]ven if a plaintiff meets all of the elements of a conversion claim, the claim will still be dismissed if it is duplicative of a breach of contract claim."[51]

## V. DISCUSSION

### A. Russell Lacks Standing to Bring These Claims in an Individual Capacity

Regardless of the current entity status of RPG, Russell does not have standing to bring claims stemming from RPG's Printing Agreement with Brown as only RPG had a legal relationship with Brown.[52] Russell cannot bring any of the claims stated in the Complaint in her individual capacity because all alleged

---

[50] *Lefkowitz v. Reissman*, No. 12 Civ. 8703, 2014 WL 925410, at *11 (S.D.N.Y. Mar. 7, 2014) (quoting *Ellington Credit Fund*, 837 F. Supp. 2d at 204).

[51] *AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04 Civ. 8832, 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007) (citing *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004)).

[52] *See Dore*, 690 F. Supp. 2d at 187. The Complaint states both that RPG is a sole proprietorship and that RPG has been converted to an LLC. Plaintiffs do not plead that the partnership was terminated, only that Iota Management forfeited its existence, thereby withdrawing from RPG and requiring RPG to wind up. *See* Compl. ¶ 2. Moreover, plaintiffs contend that RPG has had a continuous legal existence, stating that "the partnership entity has now been converted to an LLC." Opp. Mem. at 2.

injuries are to RPG or were indirectly caused by harm to RPG and Russell has suffered no "distinct" injury.[53] Therefore, Russell is dismissed as a plaintiff.

### B. Plaintiffs' Non-Contract Claims Fail as a Matter of Law

*First*, plaintiffs have not sufficiently pled their fraud claim as the Complaint does not state facts giving "rise to a strong inference of fraudulent intent."[54] The Complaint alleges multiple instances of erroneous billing in Brown's favor, and Brown undoubtedly has a motive to make more money. But these facts alone cannot give rise to a strong inference of Brown's intent to defraud as price adjustments were contemplated in the Printing Agreement and notice of such adjustments was not required.[55] Moreover, RPG was in a position to review Brown's invoices and discover the overbilling at any time. Given these circumstances, I cannot infer Brown's fraudulent intent.

---

[53] *Caravella*, 79 Fed. App'x at 453. In any event, the only remaining claim in this case is for breach of contract. Russell was not a party to that contract and acknowledges that she is not entitled to recover for emotional distress for breach of that contract. *See* Opp. Mem. at 7. *See also Nwagboli v. Teamwork Transp. Corp.,* No. 08 Civ. 4562, 2009 WL 4797777, at *5 (S.D.N.Y. Dec. 7, 2009) (damages for emotional distress not recoverable for intentional breach of contract).

[54] *Vaughn*, 377 Fed. App'x at 90.

[55] *See* Printing Agreement § 4.1, Ex. B-1.

But even if the fraud claim was adequately pled, it would still fail because it is duplicative of plaintiffs' breach of contract claim.[56] RPG had no legal duty separate from the duty to perform under the contract, and none of the alleged fraudulent misrepresentations are "collateral or extraneous to the contract."[57] Plaintiffs do not seek special damages on this claim other than a general claim for punitive damages.[58] Plaintiffs even use Brown's knowledge of the terms of the Printing Agreement to support their fraud claim, demonstrating that the two claims are duplicative.

*Second,* plaintiffs' claim for breach of the covenant of good faith is also duplicative of the breach of contract claim.[59] The supporting facts and relief sought for each claim are identical,[60] plainly belying plaintiffs' argument that this claim is "based on allegations different from those underlying the breach of contract claim."[61]

---

[56] *See Bridgestone/Firestone*, 98 F.3d at 19–20.

[57] *Merrill Lynch & Co.*, 500 F.3d at 183.

[58] *See Allen*, 2011 WL 2436705, at *4.

[59] *See District Lodge 26*, 610 F.3d at 54–55.

[60] *See* Compl. ¶¶ 53–60, 80.

[61] Opp. Mem. at 8.

*Third,* plaintiffs' fiduciary duty and accounting claims must be dismissed. Plaintiffs allege that Brown's superior knowledge of the printing industry and offer to serve in an advisory capacity gave rise to a fiduciary duty. The facts contained in the Complaint do not allege that Brown intended to undertake any fiduciary duty or that its relationship with RPG amounted to more than an arm's length business transaction.[62] Neither the closeness of the relationship between Brown and RPG, nor the fact that RPG trusted Brown to make decisions in RPG's favor is sufficient to establish a fiduciary duty between the two parties.[63] Because there is no fiduciary relationship between Brown and RPG, the accounting claim "merits dismissal."[64]

*Finally,* plaintiffs claim that Brown is liable for conversion because it refused to release shipments of RPG's magazines. In addition to being duplicative of plaintiffs' breach of contract claim,[65] the conversion claim is barred by the terms of the Printing Agreement. Section 5.3 states that, "as collateral security for the

---

[62] *See Northern Shipping Funds I*, 921 F. Supp. 2d at 104.

[63] *See King Cnty.,* 863 F. Supp. 2d at 299.

[64] *Ellington Credit Fund*, 837 F. Supp. 2d at 207. Moreover, accounting is not available on plaintiffs' breach of contract claim, as they have sought money damages and could obtain all necessary information through discovery. *See Leveraged Leasing Admin. Corp.*, 87 F.3d at 49 .

[65] *See AD Rendon Commc'ns*, 2007 WL 2962591, at *4.

payment of any amounts which may be or become due to [Brown]," RPG granted Brown "a security interest in any [RPG] Materials (including Work in process and undelivered Work) which shall at any time be in [Brown's] possession."[66] Therefore, Brown was not exercising "unauthorized dominion" over the undelivered materials.[67]

### C. Leave to Amend Is Denied

While plaintiffs bring many causes of action, the only viable claim is for breach of contract. Russell's claims are dismissed for lack of standing. RPG's non-contract claims fail as a matter of law and because they are duplicative of the breach of contract claim. Plaintiffs have not requested leave to amend, but, in any event, because further amendment would be futile, leave to amend is denied.[68]

## VI. CONCLUSION

For the foregoing reasons, Brown's motion to dismiss is granted. The Clerk of the Court is directed to close this motion [Docket No. 17]. A conference is scheduled for April 21, 2014 at 4:30 PM.

---

[66] *See* Printing Agreement § 5.3.

[67] *Lefkowitz*, 2014 WL 925410, at *11.

[68] *See Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[L]eave to amend a complaint need not be granted when amendment would be futile.") (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          April 3, 2014

## Appearances

**For Plaintiffs:**

Richard Pu, Esq.
Richard Pu, P.C.
120 E. 90th Street, 10c
New York, New York  10128
(212) 427-3665

**For Brown:**

John Siegal, Esq.
Sammi Malek, Esq.
Stephen Langston Ball, Esq.
Baker & Hostetler LLP (NYC)
45 Rockefeller Plaza
New York City, New York  10111
(212) 589-4200