UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2|5|15

-------------------------------------------------- X

RUSSELL PUBLISHING GROUP, LTD.,

        Plaintiff,

   - against -

BROWN PRINTING COMPANY,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**

**13 Civ. 5193 (SAS)**

-------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      This Court issued an Opinion and Order on December 2, 2014 ("the

December 2 Order") granting Brown's motion to dismiss and motion to strike.[1] On

December 9, 2014, Russell Publishing Group, Ltd. ("RPG") filed a motion for

partial reconsideration of the December 2 Order.[2] RPG contends that the Court

erred in (1) striking RPG's demand for consequential damages, (2) concluding that

---

[1]    *See Russell Publ'g Grp., Ltd. v. Brown Printing Grp*, No. 13 Civ. 5193, 2014 WL 6790762 (S.D.N.Y. Dec. 2, 2014).

[2]    *See* Plaintiff's Memorandum of Law in Support of Motion for Reconsideration ("Pl. Mem.").

1

RPG was obligated to pay Brown the disputed amounts, and (3) construing

sections of the Printing Agreement in the absence of extrinsic evidence showing

the parties' course of dealing, trade usage, and course of performance.[3]  For the

following reasons, RPG's motion is DENIED.

## II.    DISCUSSION

### A.    Legal Standard

The standard for granting a motion for reconsideration is strict.

"Reconsideration will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked – matters, in other words,

that might reasonably be expected to alter the conclusion reached by the court."[4]

"Reconsideration of a court's previous order is an 'extraordinary remedy to be

employed sparingly in the interests of finality and conservation of scarce judicial

resources.'"[5]  Typical grounds for reconsideration include "an intervening change

---

[3]      *See id.* at 1.

[4]      *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

[5]      *Oji v. Yonkers Police Dep't*, No. 12 Civ. 8125, 2013 WL 4935588, at
*1 (S.D.N.Y. Sept. 11, 2013) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713,
715 (S.D.N.Y. 2003)).

of controlling law, the availability of new evidence, or the need to correct a clear

error or prevent manifest injustice."[6]

### B. The Limitation of Liability Clause Is Neither Unconscionable nor Contrary to Public Policy

RPG contends that the Court correctly held that a disclaimer of

consequential damages will be upheld unless it is unconscionable.[7]  But RPG

argues that the Court failed to consider that the disclaimer will nevertheless be

unenforceable if it is void as against public policy.  Under New York law, a

limitation on liability will not exempt a party from liability for "'willful or grossly

negligent acts.'"[8]  Thus, in deciding whether a limitation on liability clause is

enforceable, a court must determine if the acts underlying the breach of contract

were willful or grossly negligent.

---

[6]    *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted).

[7]    The limitation on liability clause reads as follows: "Except as otherwise specifically provided in this Agreement, neither party hereto shall be liable to the other for incidental, consequential, special or punitive damages; in particular, Printer shall not be liable for any of Publisher's lost advertising revenues, or any lost advertising accounts or other loss of profits or business." Printing Agreement, Ex. A to 9/12/14 Declaration of Sammi Malek, counsel for Brown, in Support of Defendant Brown Printing Company's Motion to Dismiss and to Strike ¶ 11.4 ("Printing Agreement").

[8]    *Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 516 (S.D.N.Y. 2012) (quoting *Kalisch-Jarcho v. City of New York*, 58 N.Y.2d 377, 384 (1983)).

The December 2 Order stated that "the party's intent when breaching the contract is immaterial."[9]  This is correct up to a point.  "[I]ntentional nonperformance . . . motivated by financial self-interest" will not render a limitation of liability clause unenforceable.[10]  That is, whether a breach is intentional (meaning non-accidental) or not does not bear on the enforceability of the clause.  However, intent *is* relevant if the breach involved conduct that was willful (meaning "conduct in which defendant willfully intends to inflict harm")[11] or grossly negligent.  In such situations, the limitation on liability clause will not be enforced because "[u]nder announced public policy, [an exculpatory agreement] will not apply to exemption of willful or grossly negligent acts."[12]

RPG argues that ordinary negligence will also void the clause, because the clause did not expressly state that negligent conduct was intended to be covered by the clause.  *First*, RPG misstates the law on which it relies — the word "negligence" need not be included so long as it is clear that the parties intended to

---

[9]     December 2 Order, 2014 WL 6790762, at *8 (citing *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430 (1994).

[10]     *Metropolitan Life Ins. Co.*, 84 N.Y.2d at 438.

[11]     *Id.*

[12]     *Soroof Trading Dev. Co.*, 842 F. Supp. 2d at 516 (internal quotation omitted).

4

include negligent conduct within the exculpatory clause.[13]  *Second*, the cases on which RPG relies for this proposition are distinguishable in one crucial respect — all of the cases involved a contract clause that limited *all* liability.  The courts in those cases strictly construed the exculpatory clauses because "the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence."[14]  Here, by contrast, the clause merely limits RPG's remedies to ordinary contract damages.  Thus, Brown is *not* excused from the consequences of its own negligence.  In these situations, where sophisticated parties contract to limit the *type* of remedy of available, the limitation will be enforceable unless the conduct is willful or grossly negligent.[15]  Thus, ordinary negligence will not void the clause.

Further, RPG has not pleaded facts that would constitute either willful or grossly negligent conduct.  "Only 'conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing' will constitute gross

---

[13]     *See Gross v. Sweet*, 49 N.Y.2d 102, 108 (1979).

[14]     *Id.* at 106.

[15]     *See, e.g.*, *Net2Globe Int'l Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 450–51 (S.D.N.Y. 2003) (citing cases).

negligence for purposes of invalidating a limitation of liability clause."[16] "Willful

acts" are interpreted as conduct that is "tortious in nature, i.e., wrongful conduct in

which defendant willfully intends to inflict harm on plaintiff at least in part through

the means of breaching the conduct between the parties."[17] In the three previous

Opinions in this case, the Court reviewed the allegations in the First and Second

Amended Complaints and concluded, as a matter of law, that the allegations did

not support a finding of tortious conduct.[18] RPG has not identified any facts that

the Court overlooked. The few new facts in the Second Amended Complaint, as

compared to the First Amended Complaint, do not give "rise to a strong inference

---

[16]    *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, No. 05
Civ. 6734, 2012 WL 4509877, at *4 (W.D.N.Y. Sept. 28, 2012).

[17]    *Metropolitan Life Ins. Co.*, 84 N.Y.2d at 84.

[18]    *See Russell Publ'g Grp., Ltd. v. Brown Printing Co.*, No. 13 Civ.
5193, 2014 WL 1329144, at *4 (S.D.N.Y. Apr. 3, 2014) ("The Complaint alleges
multiple instances of erroneous billing in Brown's favor, and Brown undoubtedly
has a motive to make more money. But these facts alone cannot give rise to a
strong inference of Brown's intent to defraud . . . .); *Russell Publ'g Grp., Ltd. v.
Brown Printing Co.*, No. 13 Civ. 5193, 2014 WL 1612166, at *1 (S.D.N.Y. Apr.
21, 2014) ("[N]one of these allegations establish Brown's wrongful intent. It is
undisputed that Brown made a good faith effort to correct any billing errors.");
December 2 Order, 2014 WL 6790762, at *5 (noting that most of the allegations in
the Second Amended Complaint were already pleaded in the First Amended
Complaint).

6

of fraudulent intent."[19]   The First Amended Complaint alleged "that [in] nearly

every single one of the monthly bills rendered from 2007 through 2012, there were

billing errors in Defendant's favor."[20]   The Second Amended Complaint provides

the specifics of these billing errors: "markups as much as 22%, 14%, 13%, 12%

and in many instances, 9% or 10%."[21]   However, as discussed in the Court's

previous Opinion, "none of these allegations establish Brown's wrongful intent.  It

is undisputed that Brown made a good faith effort to correct any billing errors."[22]

### C.   RPG Was Not Entitled to a Setoff

RPG argues, for a third time, that it was entitled to a setoff in the

amount it claims it was overbilled.  RPG contends that, under New York law, there

is a common law right of setoff that "allows entities that owe each other money to

apply their mutual debts against each other . . . ."[23]   However, "[t]here is no need to

---

[19]   *Vaughn v. Air Line Pilots Ass'n*, 377 Fed. App'x 88, 90 (2d Cir. 2010).

[20]   First Amended Complaint ("FAC") ¶ 27.

[21]   Second Amended Complaint ("SAC") ¶ 32(c)(ii).

[22]   *See Russell Publ'g Grp.*, 2014 WL 1612166, at *1 (citing FAC ¶ 29). *See also* SAC ¶ 24 (noting Brown's president admitted billing errors and offered RPG a credit of approximately $74,300).

[23]   Pl. Mem. at 5 (citing *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002).

determine whether New York contract law includes a default rule that permits a right to offset [where] . . . [t]he terms of the Agreement make any such rule, if it exists, inapplicable to the case at bar.  It is not, and could not plausibly be, contended that New York law provides a default rule that prevails over an explicit contractual provision that bars offset."[24]  That is exactly the case here.  Paragraph 5.5 of the Printing Agreement sets out the procedure for disputed invoices — RPG was required to put the disputed amount into an escrow account if the dispute was not resolved within thirty days.[25]  As RPG did not follow this procedure, Brown was entitled to suspend performance under paragraph 5.4.[26]

### D.    Construction of the Printing Agreement

Finally, RPG argues that the Court should not have construed the sections of the Printing Agreement regarding payment without considering extrinsic evidence that was not before the Court.  As an initial matter, the Court may consider extrinsic evidence regarding course of dealing, usage of trade, and

---

[24]    *Refinemet Int'l Co. v. Eastbourne N.V.*, 25 F.3d 105, 108 (2d Cir. 1994).

[25]    *See* Printing Agreement ¶ 5.5.

[26]    *See id.* ¶ 5.4 ("If Publisher fails to pay any invoice within 10 days after Printer shall have notified Publisher of the failure of payment, Printer may suspend all performance hereunder until payment of all outstanding amounts . . . is made . . . .").

course of performance under UCC 2-202 in construing a contract's meaning "so long as that extrinsic evidence does not contradict the contract's language."[27] However, any extrinsic evidence regarding these sections was unnecessary for the purposes of deciding Brown's motion to dismiss the fraud claim and motion to strike. This motion for reconsideration is limited to the December 2 Order.[28]  In that Order, I considered the payment sections of the contract solely for the purpose of determining whether RPG had alleged any conduct on Brown's part that would rise to the level of willful or grossly negligent acts, and therefore void the limitation on liability clause.  Brown's conduct in retaining RPG's materials and suspending performance did not rise to the level of tortious conduct because those actions were expressly allowed by the Printing Agreement.[29]  No extrinsic evidence could have shown otherwise unless it expressly contradicted the contract's language permitting these actions.  And — in that case — it could not have been considered.

---

[27]     *Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*, 728 F. Supp. 2d 531, 535 (S.D.N.Y. 2010).

[28]     To the extent that RPG contends that the Court should not have construed these sections of the Printing Agreement without extrinsic evidence in various earlier Opinions that discussed RPG's (now-dismissed) conversion claim, the argument is untimely.

[29]     *See* Printing Agreement ¶¶ 5.3, 5.4, 5.5.

9

## III.   CONCLUSION

For the foregoing reasons, RPG's motion for reconsideration is

DENIED.  The Clerk of the Court is directed to close this motion [Dkt. No. 100].

A conference is scheduled for March 3, 2015 at 4:30 p.m.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 5, 2015

10

**- Appearances -**

**For Russell Publishing Group, Ltd.:**

Richard Pu, Esq.
Richard Pu, P.C.
120 E. 90th Street, 10C
New York, New York  10128
(212) 427-3665

**For Brown Printing Company:**

Sammi Malek, Esq.
Stephen L. Ball, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York City, New York  10111
(212) 589-4200